United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 22, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-20272
_____

RICHIE PICKENS; MICHAEL SHOOK; ANDY BRECKWOLDT

            Plaintiffs - Appellants

      v.

SHELL TECHNOLOGY VENTURES INC; ET AL

            Defendants

SHELL TECHNOLOGY VENTURES INC; SHELL INTERNATIONAL EXPLORATION
AND PRODUCTION B V; SHELL INTERNATIONAL EXPLORATION AND
PRODUCTION INC

            Defendants - Appellees

_____

Appeal from the United States District Court
for the Southern District of Texas, Houston
No. H-01-CV-2625
_____

Before KING, Chief Judge, and HIGGINBOTHAM and DAVIS, Circuit
Judges.

PER CURIAM:[*]

     This is a Title VII case in which the plaintiffs assert

national origin discrimination and hostile work environment

_____

     * Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

- 1 -

claims against their former employer.  The district court granted summary judgment in favor of the employer.  We AFFIRM.

## I.    BACKGROUND

This appeal concerns allegations of employment discrimination brought by Plaintiffs-Appellants Richie Pickens, Michael Shook, and Andy Breckwoldt (collectively, the "plaintiffs") against their former employer, Defendant-Appellee Shell Technology Ventures, Inc. ("STV").  STV was created in 1996 by Defendant-Appellee Shell International Exploration and Production, Inc. and is a business unit of the Royal Dutch/Shell Group of Companies ("Shell").  STV has offices in both Houston, Texas and Rijswijk, Holland and employs staff from several countries.  The plaintiffs are all American.  For most of the time period relevant to this appeal, their supervisors were European nationals located in the Rijswijk office.

Pickens, who was stationed in Houston, began working for STV in 1997.  STV terminated Pickens's employment in 2000.  Shook was also stationed in Houston.  He began working for Shell in 1981, and he began working for STV in 1996.  STV terminated Shook's employment in 2000.  Breckwoldt began working for Shell in 1979, and he began working for STV in 1997.  He initially worked in Houston, but he was soon transferred to the Rijswijk office.  Breckwoldt is still employed by Shell, although not with STV.  He alleges that his supervisors demoted him several times

in the course of his employment with STV.

On May 25, 2001, the plaintiffs brought suit in Texas state court alleging that they were discriminated against because of their national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1)(2000), and that they were subjected to a hostile work environment, also in violation of Title VII.[1]  Pickens, an African American, additionally alleges that he suffered from racial discrimination in violation of Title VII.  STV removed to the United States District Court for the Southern District of Texas.  STV then brought a motion for summary judgment, which the district court granted on February 19, 2004.  The plaintiffs appeal that judgment.

## II.    STANDARD OF REVIEW

### A.    Summary Judgment Standard of Review

We review a district court's grant of summary judgment de novo, applying the same legal standards as the district court. Fierros v. Tex. Dep't of Health, 274 F.3d 187, 190 (5th Cir. 2001).  Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as

---

[1]    Pickens and Shook were the original plaintiffs, alleging violations of Texas state law.  On July 5, 2001, Breckwoldt filed a petition for intervention, asserting claims under Title VII. Pickens and Shook then amended their pleadings to allege violations of Title VII.  Only the Title VII claims are relevant to this appeal.

a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also FED. R. CIV. P. 56 (c).  The initial burden to demonstrate the absence of a genuine issue concerning a material fact is on the movant.  Celotex, 477 U.S. at 324.  Upon showing that there is an absence of evidence to support an essential element of the non-movant's case, the burden shifts to the non-movant to establish that there is a genuine issue of material fact.  Id.

**B.    The McDonnell Douglas Framework**

The McDonnell Douglas burden-shifting framework governs the plaintiffs' Title VII claims.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Under the McDonnell Douglas approach, the plaintiff has the initial burden of proving a prima facie case by a preponderance of the evidence.  Id.  A plaintiff satisfies this initial burden by showing that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action such as termination or demotion; and (4) he was replaced by someone not of the protected class or others similarly situated were more favorably treated. See, e.g., Okoye v. Univ. of Tex. Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001).

Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for the challenged employment

action.  McDonnell Douglas, 411 U.S. at 802.  If the defendant proffers such a legitimate reason, the burden shifts back to the plaintiff to show that the defendant's reason was merely a pretext for discrimination.  Rios v. Rossotti, 252 F.3d 375, 378 (5th Cir. 2001) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 138-42 (2000)).  Throughout, the ultimate burden of persuasion remains with the plaintiff.  Reeves, 530 U.S. at 143.

## III.  ANALYSIS

### A.  Discrimination Claims

#### 1.  Richie Pickens's Claims

The district court ruled that STV had a legitimate non-discriminatory reason for terminating Pickens.  While employed by STV, Pickens began forming a consortium to purchase an oil refinery in Louisiana.  Pickens pursued this venture on company time and using company resources.  Specifically, Pickens tried to gain access to Shell's proprietary information regarding the refinery.  After his supervisors became aware of this activity, STV terminated Pickens for misusing company time and resources to pursue a personal business venture that constituted a conflict of interest.  On this evidence, the district court found that STV had legitimate business reasons for terminating Pickens's employment.

Pickens argues that the district court failed to consider relevant evidence raising a material issue of fact as to whether STV's proffered reasons for his termination were pretext for national origin discrimination.[2]  Pickens first argues that the district court failed to consider evidence that Steve Carter and Dave Martin, both of whom are Scottish and were executives at STV, made a number of anti-American comments such as "Americans are greedy," "Americans are cowboys," and "Americans are overpaid."  Specifically, Pickens argues that the district court erred in only considering this evidence as it related to the hostile work environment claims, while ignoring its probative value in proving discriminatory animus.

Contrary to Pickens's assertions, the district court specifically noted that the anti-American comments were immaterial since the decision to terminate Pickens was exclusively made by Chris Duhon, the Director of STV and an American.  Thus, the district court did not ignore the impact of the statements on the plaintiffs' discrimination claims.  Further, these comments do not establish pretext.  It is true that if an employee can establish that others had leverage over

---

[2]     Although Pickens additionally claims that he was discriminated against based on his race, he does not offer any arguments as to how his termination was a pretext for racial discrimination nor does he assign error to the district court's decision on this matter.  Because of his failure to brief the issue adequately, we deem it waived.  See Robinson v. Guarantee Trust Life Ins. Co., 389 F.3d 475, 481 n.3 (5th Cir. 2004).

the official decisionmaker, then it is proper to impute their discriminatory attitudes to the formal decisionmaker.  Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226-27 (5th Cir. 2000). Thus, if Pickens could establish a factual issue as to whether Carter or Martin exerted such leverage over Duhon, then summary judgment would have been improper.  However, Pickens does not offer sufficient evidence to establish a genuine issue of fact on this matter.  Pickens offers an e-mail that Martin sent to Duhon recommending that Pickens, as well as Shook, be terminated. However, this e-mail does not reflect that Martin exerted leverage or control over Duhon's decisionmaking.  All it reflects is that Martin offered his input.  It does not establish what impact that input may have had on Duhon.  Thus, the e-mail is insufficient to raise a factual issue as to whether Carter and Martin's alleged discriminatory attitudes could be attributed to Duhon, the ultimate decisionmaker.

Pickens next claims that he was actually pursuing the refinery venture on behalf of STV and not for personal gain.  The district court found this explanation inherently unbelievable. Considering that the refinery project was beyond the scope of both Pickens's job responsibilities and STV's line of business and that he also did not inform his supervisors of the project, we agree with the district court's determination.  Further, if this claim were true, the circumstances were such that STV could have reasonably believed that Pickens was pursuing the refinery

for personal gain.  For the purposes of Title VII, this reasonable belief is enough to justify Pickens's termination. See Jones v. Flagship Int'l, 793 F.2d 714, 729 (5th Cir. 1986); Dickerson v. Metro. Dade County, 659 F.2d 574, 581 (5th Cir. Unit B Oct. 1981).  Thus, Pickens's claim that he was pursuing the refinery on STV's behalf is irrelevant to the disposition of the case and does not raise an issue of material fact.

Pickens also argues that the district court did not sufficiently consider an e-mail Martin sent to Carter shortly after they discovered Pickens's refinery plans.  The e-mail states:

> Finally, [a]t your suggestion, I would like to leave the decision to take [Pickens] out of the loop until Thursday morning when we have our next face to face to ensure we don't compromise Shell's position with respect to [Pickens] <u>as we were already considering a poor performance procedure with him</u>.

(emphasis added).  Pickens seems to view this e-mail as evidence of STV's preexisting plans to terminate him because of his national origin.  The e-mail does not prove nearly so much.  At most, it reflects that, independent of Pickens's refinery activities, STV was already displeased with Pickens's job performance.  There is simply no way to draw an inference of discrimination from this e-mail.  Thus, the e-mail does not raise a genuine issue as to pretext.

In sum, none of Pickens's arguments demonstrates that there

is a genuine issue of material fact as to whether STV's proffered nondiscriminatory reasons for his termination were a pretext for national origin discrimination.  Under the McDonnell-Douglas framework, STV is thus entitled to judgment as a matter of law.  Consequently, the district court's grant of summary judgment as to Pickens's discrimination claims was appropriate.

### 2.  Michael Shook's Claims

The district court found that Shook could not establish a prima facie case since he was replaced by an American.  As with Pickens, the district court also found that STV had legitimate non-discriminatory reasons for terminating Shook.  While employed by STV, Shook spent company time and resources developing an internet startup company.  Shook spent time at work soliciting investors for his proposed business using STV's e-mail system. Shook also wrote in various e-mails that he intended to leave STV if he secured sufficient funding for his new company.  Based on these facts, STV terminated Shook's employment.

Shook argues that the district court committed a factual error in determining that he was replaced by an American.  Shook also argues that the district court ignored evidence that established a genuine issue as to whether his termination was pretextual.  Even if we assume, arguendo, that the district court erred in determining that Shook was replaced by an American, Shook still does not raise any genuine issues of fact as to pretext.

Shook offers several arguments to demonstrate that his termination was pretextual.  First, he argues that his business venture did not present a conflict of interest since the internet company would not compete with STV or any other Shell company.  Second, he argues that he was not using company time to develop his business since he worked irregular hours.  Third, he argues that other employees used STV's e-mail system for personal use.

None of these arguments raises a genuine issue of material fact as to whether his termination was pretextual.  Whether the internet company would actually compete with Shell is irrelevant because Shook's devotion of time at the office to a private business venture for which he admitted he would leave Shell demonstrates poor judgment.  STV's reasonable belief that Shook's activities were against STV's interests justifies his termination for the purposes of Title VII.  See Jones, 793 F.2d at 729; Dickerson, 659 F.2d at 581.  So as with Pickens's claim regarding the refinery venture, Shook's arguments do no relate to facts that are material to the question of pretext.  As such, STV was entitled to judgment as a matter of law on Shook's discrimination claims and summary judgment was appropriate.

### 3.  Andy Breckwoldt's Claims

As we understand his argument, Breckwoldt claims that he was demoted, and thus suffered an adverse employment action, on four separate occasions.  First, Breckwoldt claims he was demoted

during the process of his move to Rijswijk.  When he agreed to
move to Holland, Breckwoldt had received assurances from Bill
Dirks, the original President of STV, that he would head the new
office in Rijswijk.  However, in the process of transferring,
Breckwoldt was informed by Carter, STV's former acting Chief
Executive Officer, that he would merely be a team leader on
Deepwater, one of STV's project teams.  Second, Breckwoldt claims
that in 1998, Martin, his then-supervisor, demoted him from team
leader of Deepwater to team member.  However, after about a year,
during which time he was supervised by Americans, Breckwoldt was
eventually able to regain his position as a team leader.  Third,
Breckwoldt claims that in March 2000, Martin, who by this time
was once again Breckwoldt's supervisor, again demoted Breckwoldt
from team leader of Deepwater to team member.  Finally,
Breckwoldt claims Martin demoted him yet again after he moved
back to Houston once the Deepwater project was completed.  He
requested Martin to sponsor him for a promotion to team leader.
Martin denied the request and instead transferred Breckwoldt to
work as a team member on the Bluegraf project.  Breckwoldt claims
that Bluegraf was less prestigious than Deepwater, did not
adequately utilize his skills, and did not match his professional
interests.  Breckwoldt also claims that Martin told him that his
future options at STV were limited.

The district court found that Breckwoldt offered no evidence
showing that any of these transfers were indeed demotions.  In

- 11 -

the district court's view, all that Breckwoldt established was that in his mind, his new assignments were less desirable.  Thus, the district court found that he did not establish that he suffered an adverse employment action.  On appeal, Breckwoldt claims that the district court neglected to consider Sharp v. City of Houston, 164 F.3d 923 (5th Cir. 1999).  In Sharp, we stated that "[t]o be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse--such as being less prestigious or less interesting or providing less room for advancement."  Id. at 933.  On this standard, Breckwoldt argues that he did establish that he suffered an adverse employment action.

As to Breckwoldt's first two demotion claims, even if we assume, arguendo, that they were adverse employment actions, they are time-barred.  Breckwoldt had 300 days after the complained-of employment actions to file a charge of discrimination.  42 U.S.C. § 2000e-5(e)(1)(2000)(requiring Title VII charges to be made within 300 days of the incident if the incident was initially reported to a state or local agency).  After first filing charges with the relevant state agency, he filed a charge with the United States Equal Employment Opportunity Commission on November 29, 2000.  Therefore, he may not recover for employment actions taken before February 2, 2000.  Because the first two alleged demotions occurred in 1998, Breckwoldt's claims with respect to them are

time-barred and summary judgment was appropriate.

Breckwoldt's third demotion (i.e., his second demotion from team leader to team member of Deepwater) occurred in March 2000 and is not time-barred. However, this claim fails because Breckwoldt has not pointed to any evidence indicating how the job responsibilities of a team member are objectively worse than those of a team leader. Further, a review of the record indicates that no such evidence exists. Without such evidence, it is impossible to find that being moved from team leader to team member was an adverse employment action within the scope of Title VII. Because Breckwoldt has failed to raise a genuine issue of material fact as to one of the elements of the prima facie case, STV was entitled to judgment as a matter of law as to Breckwoldt's third demotion claim.

Breckwoldt's fourth alleged demotion must also fail on summary judgment. This allegation has two components. The first is Martin telling Breckwoldt that his future options at STV were limited. The second is Breckwoldt's transfer to the Bluegraf project. As to the first aspect of this claim, assuming such a statement was made, it would not qualify as an adverse employment action. See Mattern v. Eastman Kodak Co., 104 F.3d 702, 708 (5th Cir. 1997) (finding that a verbal threat of termination was not an adverse employment action under Title VII). Regarding the second aspect of this claim, Breckwoldt has not offered any evidence explaining how being a team member of Bluegraf was

objectively worse than being a team member of Deepwater.  Thus, the district court properly granted summary judgment to STV as to Breckwoldt's claims.

**B.    Hostile Work Environment Claims**

1.    National Origin Based Claims

The district court granted summary judgment on the plaintiffs' assertions that they suffered from a hostile work environment because of their national origin.  The plaintiffs mainly cited Carter and Martin's anti-American comments as evidence that a reasonable person working at STV would consider STV to be hostile, abusive, and discriminatory towards Americans. The district court found that these remarks were not pervasive or abusive enough to create a hostile work environment.

On appeal, the plaintiffs argue that the district court did not adequately consider the evidence supporting their claims. The plaintiffs mainly cite the anti-American remarks.  They also point to Carter's overall insensitivity and mean-spiritedness, the perception among STV staff that Carter did not like Americans, and the perception among STV staff that Americans were not treated fairly.  The plaintiffs' arguments are unavailing.

The Supreme Court has held that "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment, Title VII is violated." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)(internal quotation marks and citations omitted); see also Weller v. Citation Oil & Gas Corp., 84 F.3d 191, 194 (5th Cir. 1996) (noting that factors to consider for a hostile work environment claim include "the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance").

The plaintiffs' evidence does not raise a genuine issue of material fact as to whether the standard established in Harris was met. Much of the evidence upon which the plaintiffs rely is the "perception" that Americans were being unfairly treated, but this hardly illustrates that the working conditions were so bad as to create an abusive workplace. The plaintiffs' strongest evidence is Carter's anti-American comments. However, these statements also lack the requisite pervasiveness or severity. See Indest v. Freeman Decorating, Inc., 164 F.3d 258, 264 (5th Cir. 1999) (noting that discourtesy, rudeness, offhand comments, and isolated incidents that are not extremely serious will not amount to discriminatory changes in the terms and conditions of employment). Without more evidence, the plaintiffs cannot establish a genuine issue of material fact as to whether STV created a hostile work environment for American employees.

2.   Race Based Claims

- 15 -

In addition to national origin discrimination, Pickens asserts that he also suffered from a racially hostile work environment. The district court ruled that Pickens's claim failed because it was based solely on events occurring at a company Christmas party held in Holland in December 1998 for STV's executives. The party featured a traditional Dutch skit in which Santa's helpers were white children with their faces painted black. During the course of the skit, other employees in the audience directed racially insensitive comments towards Pickens. In the district court's view, the Christmas party did not involve remarks that were pervasive or abusive enough to create a hostile work environment.

As with the national origin based claims, Pickens argues that the district court generally misapprehended the relevant test for determining a hostile work environment. This claim fails. This single event was simply not sufficiently severe to create a hostile working environment. See Indest, 164 F.3d at 264; Weller, 84 F.3d at 194; DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 595-96 (5th Cir. 1995). Because Pickens offers no other evidence of racial bias or harassment in the workplace, summary judgment on his hostile work environment claim was also proper.

## IV.  CONCLUSION

For the foregoing reasons, the judgment of the district

- 16 -

court is AFFIRMED.