# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 7, 2008

Charles R. Fulbruge III
Clerk

No. 07-30395
Summary Calendar

KEITH L SMITH

                                    Plaintiff-Appellant

V.

FRANCIS J HARVEY, Secretary of the Army

                                    Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans
USDC No. 2: 06-CV-953

Before JOLLY, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Keith Smith ("Smith") brought an action against his employer, Francis J. Harvey, Secretary of the Army (the "Secretary"), alleging race discrimination, hostile work environment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). The district court granted summary judgment in favor of the Secretary, and Smith appeals. For the following reasons, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Smith is an African-American male who works as a price-cost analyst for the United States Army Corps of Engineers in New Orleans. On January 23, 2004, Smith brought an Equal Employment Opportunity ("EEO") complaint of race discrimination against his immediate supervisor, Cynthia Nicholas ("Nicholas"), and her supervisor, Audrey Tilden ("Tilden"), concerning events preceding those underlying the instant lawsuit. In the current lawsuit, Smith claims retaliation based on his earlier complaint, race discrimination, and hostile work environment. His claims are based on (1) a series of inquiries by Nicholas regarding Smith's long-distance telephone usage; (2) a comment Branch Chief Charles Zammit ("Zammit") made to Smith's fellow employee Frederick Pitts ("Pitts"); and (3) the decision by Acting Deputy District Commander of the Army Corps Michael Zack ("Zack") not to take formal action regarding Zammit's comment.

In May 2004, Tilden directed Nicholas to review the long-distance telephone bills in her division for any excessive charges. Nicholas discovered that Smith's April 2004 telephone bill was over $217, whereas the average in his division was under $50. On May 27, 2004, when Nicholas asked Smith about the charges, Smith responded that all calls were business-related. On June 3, Nicholas e-mailed Smith a reminder to give her an explanation of the telephone bill, and Smith reiterated that the calls were business-related. After Nicholas requested a more detailed explanation, Smith replied with a list of agencies and cities to which he had made calls. Nicholas asked him to describe the people he had called and the reasons for the calls. Smith told Nicholas that she was harassing him, that he had answered her questions already, and that she should be more specific about what she wanted. On June 10, 2004, Nicholas sent Smith a memorandum listing nine phone numbers and requesting certain specific details about each. On June 14, 2004, Smith provided Nicholas with the

requested information. Nicholas then stopped making inquiries about the phone bill, and Smith was not subjected to any discipline related to the telephone charges.

The other events Smith claims are relevant to this lawsuit began when, on three occasions, Tilden noticed Smith talking with a fellow employee, Pitts, about personal matters in Pitts's cubicle and within the hearing of other employees. According to Smith, he engaged in discussions once or twice a week with Pitts, a white male, about "what was happening with [Smith]," "the general climate of the office," "the sexism in the office," and "the difference in treatment that blacks received in our office." Tilden suggested to Pitts's supervisor, Zammit,[1] that Zammit inform Pitts that personal discussions should be conducted outside of the office environment. Zammit had also observed some of the conversations between Pitts and Smith and felt they were disruptive to his other employees. According to Pitts, Zammit told Pitts that Pitts was taking too much interest in Smith's situation, that it would be in Pitts's best interest to stay away from that situation, and that "something bad" was going to happen to Smith. On June 23, 2004, Pitts e-mailed Smith, describing this conversation and stating that Zammit had warned Pitts to stay away from Smith because "something bad was going to take place." Several days later, Smith filed an EEO complaint, and three weeks after the comment, Smith met with Zack to discuss the comment. After considering the fact that the alleged threat was not physical, that several weeks had passed without incident since Zammit's comment, and that Smith had already raised the issue with an EEO counselor who would resolve it, Zack concluded that the comment did not require him to take formal action.

---

[1] Zammit was Pitts's supervisor but had no authority over Smith.

Smith sued the Secretary, alleging retaliation, race discrimination, and hostile work environment under Title VII; race discrimination under 42 U.S.C. § 1981; and intentional infliction of emotional distress under Louisiana state law. The district court granted the Secretary's Federal Rule of Civil Procedure 12(b)(1) motion to dismiss the state tort and § 1981 claims for lack of subject matter jurisdiction, finding that they were preempted by Title VII, but it denied the Secretary's Rule 12(b)(6) motion to dismiss Smith's Title VII claims. The Secretary later filed a motion for summary judgment on the Title VII claims, and the district court granted the motion. Smith appeals.

## II. STANDARD OF REVIEW

We review de novo the district court's grant of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Musslewhite v. State Bar of Tex., 32 F.3d 942, 945 (5th Cir. 1994). A Rule 12(b)(1) motion "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).

We also review de novo the district court's grant of a motion for summary judgment.[2] Tex. Indus. v. Factory Mut. Ins. Co., 486 F.3d 844, 846 (5th Cir. 2007). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In a Title VII case, the plaintiff has the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the plaintiff does so, a presumption of discrimination arises and the burden shifts to the employer to produce a

---

[2] Smith argues that the trial court erred in granting the Secretary's motion to dismiss for failure to state a claim and urges this court to accept as true all of the allegations in the complaint. However, the trial court actually denied the Secretary's motion to dismiss for failure to state a claim and later granted the Secretary's motion for summary judgment on those claims. Therefore, we apply the summary judgment standard on appeal.

legitimate, nondiscriminatory reason for the alleged adverse employment action. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 (5th Cir. 2001). If the employer produces such a reason, the plaintiff must offer evidence sufficient to create a genuine issue of material fact either that (1) the defendant's proffered reason is not true, or (2) the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).

## III. ANALYSIS

### A.    42 U.S.C. § 1981 and Louisiana tort claims

It is well established that "[T]itle VII provides the exclusive remedy for employment discrimination claims raised by federal employees." Jackson v. Widnall, 99 F.3d 710, 716 (5th Cir. 1996) (citing Brown v. Gen. Servs. Admin., 425 U.S. 820, 835 (1976)); see also Rowe v. Sullivan, 967 F.2d 186, 189-90 (5th Cir. 1992) (holding that a § 1981 claim by a federal employee was preempted by Title VII); Hampton v. Internal Revenue Serv., 913 F.2d 180, 182-83 (5th Cir. 1990) (holding that a state tort claim by a federal employee was preempted by Title VII). Thus, the district court properly dismissed Smith's § 1981 and tort claims.

### B.    Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must present evidence that (1) he engaged in a protected activity, (2) an adverse employment action resulted, and (3) the protected activity and the adverse action are causally linked. Baker v. Am. Airlines, Inc., 430 F.3d 750, 754 (5th Cir. 2005). To evaluate whether an adverse employment action occurred, Smith argues that we should apply the Supreme Court's recent decision in Burlington Northern & Santa Fe Railway. v. White, 126 S. Ct. 2405, 2409 (2006), in which the Court held that an adverse employment action exists for purposes of a

retaliation claim when "the employer's actions [are] harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." The Secretary contends that the White standard applies only to private sector employees and that public employees must show that there has been an ultimate employment decision such as "hiring, granting leave, discharging, promoting, and compensating." See Dollis v. Rubin, 77 F.3d 777, 782 (5th Cir. 1995). We agree with the district court that we need not reach this question because Smith has failed to produce evidence of an adverse employment action under either standard: Smith does not allege that he suffered an ultimate employment decision, and the incidents he describes would not have dissuaded a reasonable employee from pursuing a discrimination claim.

Nicholas's request that Smith explain his unusually high phone bill in detail was a reasonable and ordinary request for a supervisor to make of an employee. Nicholas repeated the request only after Smith failed to respond to it adequately; once he provided the information, she dropped the matter. No reasonable employee would be dissuaded from making a discrimination claim by such a trivial and routine inquiry. Nor do Zammit's comment to Pitts or Zack's response to the comment rise to the level of adverse employment actions. Zammit has no authority over decisions regarding Smith's employment, which undermines any effect a statement by him would have on a reasonable employee. Moreover, Zammit did not make the comment to Smith, but to Smith's co-worker, who then relayed the comment to Smith; the hearsay nature of the comment further militates against a finding of materiality. See Thomas v. iStar Fin., Inc., 438 F. Supp. 2d 348, 366 (S.D.N.Y. 2006) (holding that threats of termination made to third parties and not directly to the plaintiff were not materially adverse actions). Also, Zammit made a comment on only one occasion, and nothing bad ever happened to Smith. This single, unfulfilled rumor would not have dissuaded a reasonable worker from making a charge of

discrimination. In addition, Zack's response to the incident, which took into consideration that the comment would be fully investigated by the EEO counselor, was reasonable and would not have dissuaded an employee from pursuing an EEO claim.

In White, the Supreme Court stated that "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." 126 S. Ct. at 2415. More serious incidents than those Smith describes have failed to satisfy the White standard for an adverse employment action. See, e.g., Jones v. Johanns, No. 06-5270, 2007 WL 2694017, at *6 (6th Cir. Sept. 14, 2007) (holding that a series of letters that directed an employee to stop discussing his pending EEO complaint during business hours and indicated that failure to stop "may result in official disciplinary action" would not dissuade an employee from pursuing a charge of discrimination); Roney v. Ill. Dep't of Transp., 474 F.3d 455, 461 (7th Cir. 2007) (holding that assignment to a dangerous inspection job, refusal to create a performance plan, and a threat to terminate an employee if he did not comply with a legitimate request do not satisfy the standard).

In sum, the incidents Smith describes were not sufficiently harmful that they would dissuade a reasonable worker from making or supporting a charge of discrimination. Smith points to no genuine issues of fact that could change this conclusion. Therefore, the district court properly granted summary judgment on this claim.

C.    Race Discrimination

To establish a prima facie case of race discrimination, a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for his job, (3) he was subjected to an adverse employment action, and (4) he was treated less favorably than similarly situated individuals of another race or replaced by

an individual of a different race. Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001). To satisfy the third prong and show an adverse employment action in a race discrimination claim, the plaintiff must produce evidence of an ultimate employment decision—an action such as "hiring, granting leave, discharging, promoting, [or] compensating." Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir. 2004) (internal quotation marks omitted). The incidents Smith describes are not ultimate employment decisions. Therefore, Smith failed to make a prima facie case of race discrimination.

D. Hostile Work Environment

To establish a prima facie case of a racially hostile work environment, a plaintiff must prove: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002). For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks omitted). To determine whether an environment is hostile or abusive, we evaluate the totality of the circumstances, including "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the employee's work performance." Id. at 23.

Smith has failed to satisfy the third prong because he has produced no evidence that these incidents were race-based other than his own subjective opinion. There is nothing in the content of Nicholas's inquiries or Zammit's comment that suggest they were based on race. In addition, he has failed to satisfy the fourth prong because these incidents do not rise to the level of severe

or pervasive harassment. They were not frequent, physically threatening, or humiliating, and they did not interfere with Smith's job performance. Race-based work incidents far more severe than those alleged here have been held not to support a hostile work environment claim. See, e.g., Mosley v. Marion County, 111 F. App'x. 726, 728 (5th Cir. 2004) (unpublished) (holding that evidence of three incidents involving racial slurs was insufficient to support a hostile work environment claim); Pickens v. Shell Tech. Ventures, Inc., 118 F. App'x. 842, 850 (5th Cir. 2004) (unpublished) (holding that a company Christmas party where a skit with characters in blackface was performed and racially insensitive comments were made to plaintiff did not create a hostile work environment). Therefore, the district court properly granted summary judgment on Smith's hostile work environment claim.

## IV. CONCLUSION

For the aforementioned reasons, we AFFIRM the judgment of the district court.

AFFIRMED.