United States Court of Appeals,

Fifth Circuit.

No. 94-20439.

Virginia WELLER, Plaintiff-Appellee,

v.

CITATION OIL & GAS CORPORATION, and Ralph Hollingshead, Defendants-Appellants.

June 3, 1996.

Appeals from the United States District Court for the Southern District of Texas.

Before GARWOOD, EMILIO M. GARZA and DEMOSS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendants Citation Oil & Gas Corporation ("Citation") and Ralph Hollingshead appeal a jury verdict awarding plaintiff Virginia Weller damages on her employment discrimination claims. We reverse.

I

Weller worked as a Contract Administrator in Citation's Contract and Marketing Department. The department consisted of Weller, her supervisor Ralph Hollingshead, and one other female employee. Through Weller's work monitoring natural gas stored in the El Paso Natural Gas Pipeline, Weller discovered that Citation owned a quantity of gas which was not reflected in Citation's records. Before completing a memorandum to Hollingshead detailing her discovery, Weller informed the Executive Vice President's secretary about the gas. When the Executive Vice President phoned Hollingshead to discuss the discovered gas, Hollingshead was "caught off guard" and was unprepared to explain the status of the gas. Hollingshead's superiors reprimanded him, and in turn, Hollingshead reprimanded Weller for ignoring proper channels. According to Weller, the reprimand was unnecessarily harsh. During the next four days, Weller testified that Hollingshead seemed angry and did not speak to her.

Shortly thereafter, Hollingshead loaned Weller a religious children's book about angels. Weller testified that she was glad they were speaking again. Upon returning the book the next day,

Weller told Hollingshead that the book presented a "unique thought" on the subject of angels.[1] Hollingshead and Weller proceeded to have a short conversation about the death of John the Baptist, and how a woman, possessed with a spirit called "Jezebel," danced when John the Baptist was beheaded. Hollingshead then gave Weller some excerpted chapters from *The Three Battlegrounds,* a book by Francis Frangipane. According to Weller, she felt "anger" and "coldness" coming from Hollingshead when he handed her the article. As he handed her the material, Hollingshead stated "the Spirit of Jezebel is alive today."

The excerpted material Hollingshead gave Weller contained an intense religious diatribe concerning the "Spirit of Jezebel," a "controlling" and "manipulative" spirit bent on "corrupting" society and turning it away from a fundamentalist understanding of the teachings of Christ.[2] According to the excerpt, the Spirit of Jezebel "is without gender," yet prefers to work through women because of the "uniqueness of the female psyche in its ability to manipulate without physical force."[3] The excerpt encourages its readers to "do battle" against the Spirit of Jezebel in order to maintain a fundamentalist Christian order.

Weller was deeply offended by the excerpt's contents. She believed that Hollingshead intended the material as a comment on her assertiveness at work. Three weeks later, after consulting an attorney, Weller concluded that she could no longer work with Hollingshead. She complained to Citation officials and requested a transfer. Citation officials made an inquiry into the incident and reprimanded Hollingshead but were unable to transfer Weller. Citation officials told Weller that they had spoken to Hollingshead and anticipated no further problems if she would return to work. After several weeks of negotiations, she resigned. Weller filed suit against Citation and Hollingshead, asserting claims for sexual harassment, constructive discharge, and intentional infliction of emotional

---

[1]Weller testified that she was not offended by this book.

[2]The article states, "When we speak of Jezebel, we are identifying the source in our society of obsessive sensuality, unbridled witchcraft and hatred of male authority."

[3]The article states, "let us recognize that this demon can also operate through men. In fact, Jezebel seeks the highly refined qualities of the professional musician...." The article continues that the spirit "flows unhindered throughout the entertainment industries. It flaunts itself in the world of fashion; it holds degrees in the philosophical departments of our schools and colleges."

distress. A jury found in her favor and awarded damages on all claims. Defendants now appeal the jury verdict.

II

The defendants argue that Weller presented insufficient evidence to support the jury's verdict. In reviewing a case for sufficiency of the evidence, we consider all the evidence presented, not just the evidence supporting the verdict, but in the light most favorable to, and drawing all reasonable inferences in favor of, the party who obtained the verdict. *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (*en banc* ). We will reverse only if reasonable minds exercising impartial judgment could not have arrived at the verdict. *DeAngelis v. El Paso Municipal Police Officers Ass'n,* 51 F.3d 591, 594 (5th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 473, 133 L.Ed.2d 403 (1995).

To state a claim for relief under Title VII[4] for gender discrimination based on a theory of a hostile work environment, a plaintiff must prove (1) that she belongs to a protected class, (2) that she was subject to unwelcome harassment, (3) that the harassment was based on sex, (4) that the harassment affected a term, condition or privilege of employment, and (5) that the employer knew or should have known about the harassment and failed to take prompt remedial action. *Nash v. Electrospace System, Inc.,* 9 F.3d 401, 403 (5th Cir.1993). Sexually discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive wo rking environment violative of Title VII. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, ----, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). In order to be actionable, however, the challenged conduct must create an environment that a reasonable person would find hostile or abusive. *Id.* Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. *Id.* at ----, 114 S.Ct. at 371. We have previously noted that the " "mere utterance of an ... epithet which engenders offensive feelings in an employee' " is insufficient, without more, to support Title VII liability.

---

[4]42 U.S.C. § 2000e-2.

*DeAngelis,* 51 F.3d at 595 (quoting *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986)).

Citation and Hollingshead argue that giving the Spirit of Jezebel excerpt to Weller was insufficient to support the jury's finding of hostile work environment. We agree. Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace. *DeAngelis,* 51 F.3d at 593. Viewing the evidence in the light most favorable to the verdict, the jury could have reasonably inferred that Hollingshead meant the article as retributive epithet—that Hollingshead remained angry at Weller and that he was calling her a "Jezebel."[5] We do not doubt that Weller was deeply offended by the article. However, we note that making actionable "conduct that sporadically wounds or offends but does not hinder a female employee's performance, would not serve the goal of equality." *Id.* Instead, a lesser standard "would attempt to insulate women from everyday insults as if they remained models of Victorian reticence." *Id.* Such a result is not the goal of Title VII. *Id.* We therefore hold that it was unreasonable, on the evidence presented, for the jury to find that Hollingshead's conduct created a hostile work environment.[6] Accordingly, we reverse the jury's verdict awarding Weller damages under a hostile

---

[5]It is undisputed that the Jezebel excerpt was an isolated incident in an otherwise satisfactory work relationship.

[6]In *DeAngelis,* we noted the yet unresolved dilemma facing courts adjudicating claims at the intersection of Title VII and the First Amendment:

> Where pure expression is involved, Title VII steers into the territory of the First Amendment. It is no use to deny or minimize this problem because, when Title VII is applied to sexual harassment claims founded solely on verbal insults, pictorial or literary matter, the statute imposes content-based, viewpoint-discriminatory restrictions on speech.

*DeAngelis,* 51 F.3d at 598-99. Supreme Court precedent in this area provides little guidance concerning whether conduct targeted for its expressive content, like Hollingshead's conduct in this case, may be regulated under Title VII. *See Wisconsin v. Mitchell,* 508 U.S. 476, 485-87, 113 S.Ct. 2194, 2200, 124 L.Ed.2d 436 (1993) (holding that conduct *not* targeted on the basis of its expressive content may be regulated under Title VII). Because we find that the evidence was insufficient to support the jury's verdict, we leave this troubling question for another day.

work environment theory.[7]

### III

The defendants next contest the jury's award for intentional infliction of emotional distress. Under Texas law, intentional infliction of emotional distress requires proof (1) that the defendant acted intentionally or recklessly, (2) that the defendant's conduct was extreme and outrageous, (3) that the defendant's actions caused the plaintiff emotional distress, and (4) that the emotional distress suffered by the plaintiff was severe. *Dean v. Ford Motor Credit Co.,* 885 F.2d 300, 306 (5th Cir.1989). Conduct is "outrageous," for purposes of an intentional infliction of emotional distress claim, "if it surpasses all bounds of decency, such that it is utterly intolerable in a civilized community." *Ugalde v. W.A. McKenzie Asphalt Co.,* 990 F.2d 239, 243 (5th Cir.1993) (internal quotation marks omitted). We have previously stated, in affirming summary judgment for a defendant on an intentional infliction of emotional distress claim, "Liability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions." *Id.* at 243.

Citation and Hollingshead argue that the evidence was insufficient to support Weller's claim of intentional infliction of emotional distress. After carefully reviewing the evidence in the light most favorable to the verdict, we conclude that Weller presented insufficient evidence to support the jury's verdict for intentional infliction of emotional distress. The Jezebel excerpt may have been hurtful and offensive, but intentional infliction of emotional distress requires evidence of conduct beyond mere insults, indignities, or petty oppressions. *Id.* Weller failed to present such evidence. Therefore, it

---

[7]Because Weller failed to present sufficient evidence to support her hostile work environment claim, her constructive discharge claim necessarily fails as well. *See Landgraf v. USI Film Prods.,* 968 F.2d 427, 429 (5th Cir.1992), *affirmed,* --- U.S. ----, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment."). We also need not address whether the jury properly held Hollingshead personally liable under Title VII. *See Grant v. Lone Star Co.,* 21 F.3d 649, 650 (5th Cir.) (refusing to hold individual, who does not qualify as an "employer" under Title VII, personally liable for creating hostile work environment), *cert. denied,* --- U.S. ----, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994). Nor need we address Citation's claim that the company took sufficient remedial steps to insulate itself from liability. *See Carmon v. Lubrizol Corp.,* 17 F.3d 791, 795 (5th Cir.1994) (insulating an employer from Title VII liability where an employer takes an employee's allegations seriously, conducts a prompt and thorough investigation, and immediately implements remedial or disciplinary measures).

was unreasonable for the jury to conclude that Hollingshead's conduct was sufficiently "outrageous" to support an intentional infliction of emotional distress claim. *See Ugalde,* 990 F.2d at 243 (holding employer's repeated references to an Hispanic employee as "wetback" insufficiently outrageous and extreme to support a claim for intentional infliction of emotional distress). Accordingly, we reverse the jury's verdict on Weller's claim of intentional infliction of emotional distress.[8]

IV

For the foregoing reasons, we REVERSE and RENDER judgment in favor of the defendants.

---

[8]Having reversed the jury's verdict in total, we need not address defendants' other points of error.