# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————————

m 99-60254
Summary Calendar

————————

BETTY TABOR,

Plaintiff-Appellant,

VERSUS

TIME WARNER ENTERTAINMENT COMPANY, L.P.,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Southern District of Mississippi
(3:98-CV-273-BN)

————————————

November 1, 1999

Before JOLLY, SMITH, and BARKSDALE,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Betty Tabor appeals an adverse summary judgment in her action for employment discrimination. Finding no reversible error, we affirm.

## I.

Tabor, a white female aged fifty-five, worked for Time Warner Entertainment Company, L.P. ("Time Warner"), and its predecessor from September 25, 1989, until she was terminated on March 27, 1997. For some of that time, she was the only white employee in her work area but not the only one in her department.

After she was terminated, Tabor sued for race, age, and disability discrimination (specifically claiming wrongful termination and hostile work environment), assault, intentional infliction of emotional distress ("i.i.e.d."), and negligent hiring (and possibly retention) of some of her black co-workers. Her bases for these claims are that (1) she was intentionally struck in the back of the head by a black co-worker in July 1995, resulting in an apology from the co-worker and a transfer of that worker to a different work area; (2) she was subjected regularly to discussion of race relations by her colleagues, some of whom often expressed the opinion that the black race was burdened by its color in America and that the white race treated the black race unfairly; and (3) she was once slapped in the hand by a supervisor and told to place documents on a different part of that supervisor's desk.

Tabor did not allege that any racially charged discussion was aimed at her specifically, nor could she state for certain that she had reported the hand-slapping incident. She called the Equal Employment Opportunity

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Commission ("EEOC") in April 1996 to discern whether the race-related discussions occurring at work violated, in the EEOC's opinion, her constitutional rights; an EEOC worker informed her that she had stated a claim.

Tabor lost her job during a reduction in force in March 1997. One other employee, a black male, was also laid off. The supervisor who decided to terminate Tabor's position was a fifty-year-old white female, who said the reason was that Tabor had less experience than any of the other full-time employees in her department. This characterization is not disputed.

Tabor and her supervisors agreed that she was not suited for any positions currently available, but she was encouraged to apply for any position for which she was qualified should it become available. Some of the work she had done was thereafter performed by a part-time employee, a thirty-year-old black female. After Tabor's termination, there remained no white employees in that section of the department.

## II.

We review a summary judgment *de novo*. *See Webb v. Cardiothoracic Surgery Assocs.*, 139 F.3d 532, 537 (5th Cir. 1998). With regard to the charge of wrongful termination based on race, age, and disability, and to the charge of assault, we affirm, essentially for the reasons stated by the district court in its Opinion and Order entered on March 18, 1999.

## III.

Tabor disagrees with Time Warner and the district court as to whether the statute of limitations in Mississippi for i.i.e.d. is one year or three. We decline to reach that issue of state law, because there is no evidence of the sort of conduct that Mississippi requires in order to state such a claim.

[I]n order to prevail, the conduct must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency,

and to be regarded as atrocious, and utterly intolerable in a civilized community. The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities . . . . Furthermore, damages for intentional infliction of emotional distress are usually not recoverable in mere employment disputes. Only in the most unusual cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous, as required for the tort.

*Brown v. Inter-City Fed. Bank for Sav.*, 738 So. 2d 262, 264-65 (Miss. App. 1999) (internal citations omitted). In *Brown*, a supervisor had harassed an employee by asking how old she was and when she was going to retire, and by commenting to her about the need for a younger staff. *See id.* at 263. Though this behavior was directed specifically and repeatedly at the plaintiff and did raise a sufficient claim of age discrimination, it yet did not rise to the level of i.i.e.d.

Tabor's case is likewise deficient. The general discussions about race and whites' propensity to discriminate against blacks may have been in poor taste, especially after Tabor had indicated they made her uncomfortable. The blow she received to the back of her head, and the slap of her hand, were unpleasant and inappropriate, if intentional, but do not, even taken together, rise above the level of "insult, indignity, threat, annoyance, or petty oppression" to the threshold of i.i.e.d. Because "we may . . . consider alternative grounds for upholding the judgment, provided the record supports such grounds," *see Gaia Techs. Inc. v. Recycled Prods. Corp.*, 175 F.3d 365, 371 (5th Cir. 1999), we by this reasoning affirm the summary judgment with regard to the claim of i.i.e.d.

## IV.

Regarding the summary judgment on the claim of hostile-workplace racial discrimination, we first note that Tabor errs in her contention that the court simply refused to consider all of her evidence of racial

discrimination in the workplace as time-barred. Rather, the court found that, because Tabor must have been aware of the complained-of actions more than 180 days before she filed her charge with the EEOC, the court could not apply the "continuing violations" doctrine and instead could consider evidence only from the 180 days before filing. Given that Tabor, long before that time, had been advised by an EEOC official that she stated a claim, this conclusion is correct.[1]

The only behavior Tabor alleges that can be considered to have established a hostile work environment after December 6, 1997, is the race-related discussions going on among two co-workers. The question, then, is whether such speech can be understood by itself to have created a discriminatorily hostile working environment. It cannot.

The law is that

[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated. This standard . . . takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury . . . . This is not, and by its nature cannot be, a mathematically precise test . . . . But we can say that whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993) (internal citations omitted). We first note, in parsing that definition, that for an action claiming hostile work environment, there must first have existed discriminatory conduct. We need not address whether mere discussion at the workplace of controversial issues related to suspect classifications can rise to the level of such discrimination.[2] Rather, we assume *arguendo* that the comments constitute cognizable discrimination against Tabor.[3]

We then note, however, that the discriminatory conversations occurred between co-workers, not supervisors. Only two co-workers were involved, and other co-workers were as offended as Tabor was and did not participate. Tabor complained to a superior only once, the superior took at least some action to quell the discussions, and Tabor did not inform any superior thereafter that the actions taken had not successfully righted the problem. While Tabor suspected that the discussions were aimed in part at her, there is no evidence to suggest that the speakers wished to hurt her feelings *because* she was white, and no evidence that she was ever

---

[1] Tabor argues that by admitting that she was aware of her rights before she filed the EEOC complaint, the district court and Time Warner also acknowledged that she was *justified* in her complaint. If that were so, any defensive invocation of the 180-day limit would constitute an admission of the charges filed. To the contrary, the response from the EEOC only indicated her complaint was sufficient to bring a claim, not that she ultimately would prevail.

[2] *See, e.g., Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191 (5th Cir. 1996); *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591 (5th Cir. 1995).

[3] It is far from plain, however, that any "discriminatory intimidation, ridicule, and insult" occurred. Time Warner's policies were neutral on their face; Time Warner did not monitor and limit Tabor's conversations any more than those of the employees whose speech Tabor disliked. None of the supervisory personnel engaged in the subject generalized discussions of race relations. Nor did all, or even most, of the co-workers participate in the discussions Tabor disliked, nor did any direct his commentary at her personally.

specifically mentioned during any of these discussionsSSor that anything negative was ever said about her specifically. Likewise, there is no evidence that Tabor's work product suffered as a result of the discussions, no evidence that she asked to be transferred to a non-discriminatory environment (such as the floor below, on which, according to the undisputed record, these discussions did not occur), and no evidence that her life outside the workplace suffered as a result of the discussions.

In short, even if we assume the co-workers' conversations to be discriminatory, they still rise only to the level of "mere offensive utterances" rather than severe, humiliating, physically threatening conduct that materially affected Tabor's work performance. The district court thus did not err in granting summary judgment on the hostile work environment claim.

## V.

The district court's opinion deals appropriately with Tabor's claim for negligent hiring of the relevant co-workers. Tabor argues that she also raised the issue of negligent *retention* of those workers. Assuming *arguendo* that a negligent retention claim was adequately pleaded, the claim cannot prevail on these facts.

Mississippi permits a claim for negligent retention when an employer "[r]etain[s] in employment a servant who is, or should be known to be incompetent, habitually negligent, or otherwise unfit." *Johnson v. Mississippi Dep't of Corrections*, 682 So. 2d 367, 370 (Miss. 1996) (citing *Eagle Motor Lines v. Mitchell*, 78 So. 2d 482 (Miss. 1955)). Tabor claims that Time Warner negligently retained the relevant co-workers, in that their behavior worked a violation of her constitutional rights. As we have said, however, the behavior did not rise to the level of a violation of law.

AFFIRMED.

**4**