**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**July 7, 2006**

**Charles R. Fulbruge III**
**Clerk**

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-30728
Summary Calendar

_____

DANA L MCKINNIS,

Plaintiff-Appellant,

versus

CRESCENT GUARDIAN, INC; EMILE LAGARDE,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:04-CV-1490

_____

Before JONES, Chief Judge, and SMITH and GARZA, Circuit Judges.

PER CURIAM:[*]

This is an appeal from the district court's grant of
summary judgment to defendant Crescent Guardian, Inc. ("Crescent")
on plaintiff Dana McKinnis's hostile work environment claim under
Title VII of the Civil Rights Act of 1964. Because the district
court erred in concluding that McKinnis's allegations of sexual
harassment were not severe or pervasive enough to establish an
actionable hostile work environment, we must **REVERSE** and **REMAND**.

_____

[*]    Pursuant to 5TH CIR. R. 47.5, the court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

**BACKGROUND**

Dana McKinnis worked as a security guard for Crescent for seven months. For part of her tenure there, McKinnis was under the supervision of Emile LaGarde. McKinnis alleges that LaGarde touched her sexually at work.[1] Specifically, she testified in her deposition that during April and May of 2003, LaGarde "was harrassing [sic] me; he kept coming in the post where I was; asking me for hugs and kisses; and touching me and stuff." This touching included, according to McKinnis, "one time he touched me on my breast; and then on my thigh." She further testified that he "was getting other co-workers to retaliate against me; picking with me on the job." McKinnis testified that she complained to a supervisor, Rosalie Knight, that LaGarde "used to always ask me for hugs and kisses; and he was touching on me; unwanted touching."

In May, McKinnis's post became armed, and she was forced to transfer to an unarmed post because she was not yet twenty-one. Once she turned twenty-one and was eligible to carry a firearm, she requested a transfer back to her original post to earn more money, at the time believing that LaGarde had been transferred from that post. In her deposition, McKinnis stated that "they had said that they moved him [LaGarde] from over there; that's why I requested to go back."

---

[1] McKinnis alleges that in April 2003, LaGarde sexually assaulted her after work; she conceded that because she never told anyone at Crescent about the assault, it is not part of the evidence in her hostile work environment claim.

On August 4, 2003, McKinnis "was getting sick of" the harassment, so she reported it to the CEO of Crescent. McKinnis testified that:

> they had me so upset I was crying and stuff; and I was – by him not believing that Emile LaGarde touched me, you know, it was kind of hard for me to just open my mouth and [mention the sexual assault incident], because if he didn't believe he touched me then he wouldn't believe me. . . . I was also trying to get everything else out; but I was so upset, and I was crying and stuff; and he acted like he ain't care anyway, because he was a young guy.

Two weeks later, McKinnis resigned.

McKinnis received a right-to-sue letter from the Equal Employment Opportunity Commission, and filed this lawsuit in May of 2004. Her complaint alleged sexual harassment in violation of Title VII and retaliation through constructive discharge.

The district court found that her allegations of sexual harassment were "simply not severe enough or pervasive enough to support a hostile work environment claim. . . . [T]he totality of workplace harassment incidents reflected in plaintiff's testimony is a handful of inappropriate incidents which occurred over a two-month period (at most) in April and May of 2003, specifically, LaGarde's alleged touching of plaintiff's breast and thigh on one occasion and touching her and making inappropriate remarks such as asking for hugs and kisses on an unknown number of occasions."[2] The district court explained the fact that "LaGarde touched

---

[2]      McKinnis also relies on a post-deposition affidavit to support her claims. Because we reverse considering only her deposition testimony, we need not reach the issue of to what extent the affidavit may be considered.

plaintiff's breast and thigh on one occasion do[es] not reflect the frequency or severity of harassing behavior that Title VII was intended to address." Calling McKinnis's other allegations "vague and imprecise," the district court dismissed them as conclusory. The court did not reach the issue of when Crescent knew of the harassment, as it concluded that McKinnis had not showed that LaGarde's conduct altered a term or condition of her employment. Accordingly, the court granted Crescent summary judgment on all of McKinnis's Title VII claims, as McKinnis had not met the prima facia case for a hostile work environment.

## STANDARD OF REVIEW

This court reviews the district court's grant of summary judgment de novo, using the same standard as the district court. Roberts v. City of Shreveport, 397 F.3d 287, 291 (5th Cir. 2005). A court must review the facts in the light most favorable to the nonmovant, in this case McKinnis. Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." Freeman v. Tex. Dep't of Crim. Justice, 369 F.3d 854, 860 (5th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317,

4

325, 106 S. Ct. 2548, 2554 (1986)).  Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e).  The nonmoving party, however, "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  Freeman, 369 F.3d at 860 (citations omitted).

**DISCUSSION**

A plaintiff may establish a Title VII violation by demonstrating a hostile work environment.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 22-23, 114 S. Ct. 367, 371 (1993).  A prima facia case of a hostile work environment is achieved by producing evidence that

> (1) that the employee belongs to a protected class;
> (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex;
> (4) that the harassment affected a "term, condition, or privilege" of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action.

Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871, 873 (5th Cir.1999).  "For sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'"  Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 2403 (1986) (quoting Henson v. Dundee, 682 F.2d 897, 902 (11th Cir. 1982)).

5

To determine if an environment is "hostile" or "abusive" within the meaning of Title VII, courts look at the totality of the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift, 510 U.S. 17, 23, 114 S.Ct. 367, 371 (1993). "A recurring point in [Supreme Court] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 2283 (1998) (citation omitted).

A Title VII plaintiff need only establish that the conduct was either severe or pervasive. "[I]solated incidents, if egregious, can alter the terms and conditions of employment." Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 436 (5th Cir. 2005). "Undoubtedly, the deliberate and unwanted touching of [a plaintiff's] intimate body parts can constitute severe sexual harassment." Id. (citing Worth v. Tyer, 276 F.3d 249, 268 (7th Cir. 2001) ("[D]irect contact with an intimate body part constitutes one of the most severe forms of sexual harassment.")). This court recently explained that a plaintiff's "assertions that she was touched 'numerous times' instead of providing exact dates or the exact number of instances do not render her allegations so

6

conclusory that they fail to create a genuine issue of material fact." Id.

The facts in this case fall much closer to those in Harvill, where there was an actionable hostile work environment, than those in Shepherd, where there was not. In Shepherd, the alleged harasser (1) made two inappropriate comments on two different occasions ("your elbows are the same color as your nipples" and "you have big thighs"); (2) attempted to look down the plaintiff's clothing several times; (3) touched her arm several times, once rubbing his hand from her shoulder down to her wrist; and (4) twice, patted his lap and remarked "here's your seat." Shepherd, 168 F.3d at 872. In Harvill, the alleged harasser (1) grabbed the plaintiff and kissed her on the cheek; (2) touched her breasts "numerous times"; (3) popped rubber bands at her breasts and patted her on the buttocks "numerous times"; and (4) once made comments about her sex life. Harvill, 433 F.3d at 435-36.

Reviewing the facts in the light most favorable to McKinnis, we conclude that the district court erred in finding that she did not raise a genuine issue of fact as to whether LaGarde's alleged conduct toward her was sufficiently severe or pervasive to alter the terms of her employment. Her allegations include more than just inappropriate comments and a pat on the arm; LaGarde touched the intimate areas of McKinnis's body, and, reviewing the allegation in the light most favorable to McKinnis, on a number of

7

occasions. This touching is sufficiently severe to preclude granting Crescent summary judgment.

McKinnis also argues that it was error for the district court to grant summary judgment to Crescent on her constructive discharge claim. To prevail on this claim, McKinnis "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir. 1992); accord Harvill, 433 F.3d at 440. In this case, the district court merely concluded that McKinnis had not shown that the harassment affected a term of her employment. On remand, the district court must address whether there are genuine issues of material fact as to the employer's knowledge and failure to take prompt remedial action and as to the severity needed to establish constructive discharge.

On the record and evidence before us, we only determine that the district court erred in finding that the evidence was not severe enough to establish a hostile work environment. We emphasize that this is a close case for summary judgment, but plaintiff's allegations and testimony thus far create material fact issues.

## IV. CONCLUSION

For the reasons discussed above, we **REVERSE** the district court's ruling of summary judgment and **REMAND** for further

8

proceedings.