# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 31, 2008

Charles R. Fulbruge III
Clerk

No. 07-30521
Summary Calendar

MICHELE GIBSON

Plaintiff-Appellant

V.

JOHN E POTTER, Postmaster General

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:05-CV-1942

Before KING, DAVIS and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Michele Gibson ("Gibson") appeals the district court's grant of the defendant's motion for summary judgment.  We AFFIRM.

## I.  FACTS AND PROCEEDINGS

In 2004, the United States Postal Service ("USPS") employed Gibson as a "casual" Automation Clerk at the Processing and Distribution Center in New Orleans.  Gibson worked the night shift from 11:00 p.m. to 7:00 a.m.  The record

---

[*] Pursuant to 5TH CIR. R. 47.5, this Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

shows that, as a casual employee, Gibson did not have a specific assignment and was not subject to work under the same supervisor for every shift. Gibson alleges that on January 14, 2004, Andrew Lea ("Lea"), her supervisor, "grabbed her on the buttocks and made suggestive comments" while she conversed with another employee. Later during that shift, James Nelson ("Nelson"), the Manager of Distribution Operations, approached Gibson and asked her whether she had been inappropriately touched. He informed her of the USPS "zero tolerance" policy toward unwanted touching or sexual harassment. Nelson also informed her that if she experienced future problems, she could speak with him, and that she should expect an apology from Lea. Lea apologized to Gibson soon thereafter.

Aubrey Watson ("Watson"), another Manager of Distribution Operations, investigated the January 14, 2004 incident and indicated that Gibson would not be required to be supervised by Lea again. Watson gave Gibson the option of working another shift, but she declined, citing her lack of transportation. Although Lea denied touching or grabbing Gibson's buttocks, and, instead, admitted to touching the small of her back, Watson recommended that Lea's pay and grade be reduced based upon his improper conduct. Lawrence Darsam, the Acting Senior Plant Manager, instead suspended Lea for fourteen days.

On February 4, 2004, Gibson filed an informal complaint with the Equal Employment Opportunity Commission ("EEOC"), describing the January 14, 2004 incident. After a resolution specialist was unable to resolve the dispute, Gibson filed a formal complaint with the EEOC on May 4, 2004. After receiving the complaint from the EEOC, the USPS issued a letter to Gibson on June 10, 2004, identifying sex discrimination as the issue for investigation. On August 7, 2004, Gibson submitted an affidavit to the EEOC investigator alleging additional misconduct by Lea occurring between October 2003 and January 2004. The EEOC investigator requested details of these allegations, instructing

Gibson in a September 10, 2004 letter to Gibson's counsel to submit a supplementary affidavit by December 1, 2004. A second request for Gibson's supplemental affidavit was sent by the EEOC investigator to her counsel on November 11, 2004, reminding counsel of the December 1, 2004 deadline. The EEOC received Gibson's untimely supplemental affidavit on January 3, 2005. The supplemental affidavit alleged a series of events occurring before the January 14, 2004 incident, including Lea engaging in "sex talk", asking for dates, and offering his telephone number to Gibson.

On January 3, 2005, the same day that the EEOC received Gibson's untimely supplemental affidavit, the USPS and the EEOC investigator notified Gibson in writing that the investigation had been completed and that her options included requesting a hearing before an administrative law judge appointed by the EEOC within thirty days or requesting a final agency decision by the USPS without a hearing. Gibson requested a final agency decision without a hearing and the decision was issued on February 22, 2005. The final decision did not consider the additional allegations of sexual harassment, and ultimately found that Gibson had not suffered sex discrimination as alleged:

> The records and testimony contained in the investigative report only document that a single incident occurred which resulted in your alleged claim of sexual harassment. Therefore, because of your failure to provide any documented evidence of an ongoing incident, our adjudication of your claim will be based on the accepted issue. At no time during the investigation of this issue did you make Postal management aware of on-going occurrences.
>
> . . . .
>
> After carefully considering the entire record, and applying the legal standards outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); [the EEOC Compliance & Appeals Manager finds] that you have failed to prove that you were subjected to discrimination as alleged.

The final decision also informed Gibson of her right to file a civil action in federal district court, which she exercised on May 31, 2005, alleging that she was subjected to sexual harassment which led to the creation of a hostile work environment. The USPS moved for summary judgment, arguing that Gibson could not establish the essential elements of her claim. The district court considered Gibson's additional claims of sexual harassment allegedly occurring between October 2003 and January 2004, finding them to fall within the ambit of a reasonable investigation into the January 14, 2004 incident, and granted summary judgment in favor of the USPS. Gibson now appeals.

## II. STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 805 (5th Cir. 2007). "Summary judgment is proper when there exists no genuine issue of material fact and the movant is entitled to judgment as matter of law." Id. (citing FED. R. CIV. P. 56(c)). "The evidence and inferences from the summary judgment record are viewed in the light most favorable to the nonmovant." Minter v. Great Am. Ins. Co. of N.Y., 423 F.3d 460, 465 (5th Cir. 2005).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the nonmovant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. To survive a summary judgment motion, the nonmovant "need only present evidence from which a jury might return a verdict in his favor," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986), but mere allegations

or denials will not defeat a well-supported motion for summary judgment. FED. R. CIV. P. 56(e).

## III. DISCUSSION

Hostile work environment claims are serious and serve "to level the playing field for women who work by preventing others from impairing their ability to compete on an equal basis with men." DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir. 1995). This type of "claim embodies a series of criteria that express extremely insensitive conduct against women, conduct so egregious as to alter the conditions of employment and destroy their equal opportunity in the workplace." Id. To establish the elements of a hostile work environment claim, Gibson must show:

> (1) she belongs to a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment was based on sex, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take remedial action.

Green v. Adm'rs of the Tulane Educ. Fund, 284 F.3d 642, 655 (5th Cir. 2002). This Court has recognized, in light of the Supreme Court's holdings in Burlington Indus., Inc.. v. Ellerth, 524 U.S. 742 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775 (1998), that in circumstances where the alleged harasser is a supervisor with authority over the employee, as in this case, only the first four elements need be satisfied. See Watts v. Kroger Co., 170 F.3d 505, 509 (1999).

Gibson satisfies the first three elements, but fails to satisfy the fourth. To decide whether the alleged harassment affected a term, condition, or privilege of her employment, she must show that the conduct was "severe or pervasive." Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 434 (5th Cir. 2005). The conduct must also qualify as both "subjectively and objectively offensive." Green, 284 F.3d at 655. "'Whether an environment is hostile or abusive depends on a

totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance.'"  Id. at 655–56 (quoting Weller v. Citation Oil & Gas Corp., 84 F.3d 191, 194 (5th Cir. 1996)). The determination of whether alleged conduct is sufficiently severe or pervasive is not an exact science, but this Court's decisions on this issue provide guidance here.  See McKinnis v. Crescent Guardian, Inc., 189 F. App'x 307, 310 (5th Cir. 2006) (unreported) (holding that chronic unwanted touching for a year resulting in plaintiff's resignation qualified as severe and pervasive); Harvill, 433 F.3d at 435–36 (holding that unwanted touching of plaintiff's breasts and buttocks over a seven-month period, despite her protests on every occasion, qualified the behavior as sufficiently severe or pervasive); Shepherd v. Comptroller of Pub. Accounts, 168 F.3d 871, 872–74 (5th Cir. 1999) (holding that "mere utterance[s] of . . . epithet[s] that engender offensive feelings" spanning over a year did not qualify as severe or pervasive).

> We agree with the district court's application of the law to the facts:

> Here, there is only one such instance [of unwanted physical contact], and even considering [the] January 14, 2004, incident in light of prior conduct, the alleged does not become objectively severe or pervasive.  Here, [Gibson] never reported any prior incidents to her employer. Moreover, the employer initiated the investigation of the January 14, 2004, on its own initiative and not as a result of a complaint by [Gibson].  Significantly, [Gibson] did not apprise the employer of the incidents that occurred prior to January 14, 2004, even after the January 14, 2004, incident.  Given [Gibson's] comments that she "brushed [Mr. Lea] off" and "laughed at him," coupled with her patent failure to report such incidents to her employer, it is apparent that the nature of the prior physical contact and comments were not severe or pervasive themselves.

Gibson v. Potter, No. 05-1942, 2007 WL 1428630, at *7 (E.D. La. May 10, 2007).

Unlike the offensive conduct in McKinnis and Harvill, the conduct here

consisted of one nonconsensual physical touching, which was promptly investigated, even though Gibson did not report the conduct herself. Gibson's other allegations are unsubstantiated and analogous to the "boorish and offensive" comments in Shephard; they do not rise to the level of severity or pervasiveness required by the law. "A recurring point in [Supreme Court] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Shephard, 168 F.3d at 874 (quoting Faragher, 524 U.S. at 786). Viewing the totality of the circumstances here in the light most favorable to Gibson, including the January 14, 2004 incident, those incidents allegedly occurring between October 2003 and January 2004, and the side effects of the January 2004 incident that Gibson alleges now, we nevertheless conclude that a reasonable jury would not find that Lea's conduct was sufficiently severe or pervasive to alter a term or condition of Gibson's employment.[1] Therefore, we hold that Gibson has not raised a genuine issue of fact regarding the elements of her hostile work environment claim.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.

---

[1] Under Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998), and Faragher v. City of Boca Raton, 524 U.S. 775, (1998), an employer is afforded an affirmative defense to avoid vicarious liability for harassment by a supervisor. "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher, 524 U.S. at 807. Because we hold that Gibson's allegations of Lea's behavior were not sufficiently severe or pervasive to alter her condition of employment, and, therefore, do not establish a hostile work environment claim, we have no need to explore whether USPS can assert a valid Ellerth/Faragher defense.