# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 10, 2008

Charles R. Fulbruge III
Clerk

No. 07-20738
Summary Calendar

ROBIN MIRE,

Plaintiff-Appellant,

v.

TEXAS PLUMBING SUPPLY COMPANY, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-612

Before STEWART, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff Robin Mire ("Mire") appeals the district court's grant of summary judgment to Defendant Texas Plumbing Supply Company, Inc. ("TPS"), with respect to her Title VII claims for sexual harassment and retaliation. For the following reasons, we REVERSE in part and AFFIRM in part the judgment of the district court.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Mire began working at TPS in January 2000, as a clerk in accounts payable. The parties dispute Mire's work record prior to the alleged harassment. Mire contends that she had an excellent work record and received no complaints about her skills or ability to handle the job. In contrast, TPS claims that Mire was a "problem employee," asserting that she was combative, cursed at her co-workers, and difficult to work with.

Mire alleges that in 2004, a rumor was circulated around the workplace that she was having an affair with a co-worker, Don Pearson. Mire contends that subsequently, beginning in December 2004, she began being sexually harassed by male employees of TPS working downstairs in the sales and warehouse areas of the building. Mire testified to the following incidents of harassment: (1) Ray Rhodes, after Pearson's termination, asked her: "How do you feel now that your lover boy is not there anymore;" (2) Sonny Ackley "grabbed her behind;" told her to "keep [her] mouth shut;" and made various other sexual comments; (3) Ricky Garza made numerous comments about "how good [her] butt looked," asked if he could touch her breasts, and asked her if she "had a boob job;" (4) Fidel often whistled at her and once pulled her up against him in dance pose, grabbing her with his arms; (5) Kenny Taylor, in front of a customer, told her that her jeans "made [her] ass look good;" (6) Johnny Booth frequently commented about her "rear end;" and (7) Kenny Tillmon commented about her "junk in the trunk," i.e., her buttocks. Mire alleges that the sexual harassment "got to the point where she could not walk downstairs" where these employees worked because every time she did so "something was said." She testified that the comments made by the male employees upset her and brought tears to her eyes.

Mire claims that she complained to her supervisor, Margaret Anthony, about Ackley and Garza, but that Anthony "waived off" her complaints. Plaintiff

also contends that she told Ethan Flowers, Anthony's manager, about the harassment, but it is unclear how much of the alleged harassment she told him about. Finally, Mires asserts that she told Terry Snyder, one of TPS's owners about the harassment, and that he told her that "everything would cool down after a little while." During the January and February monthly employee meetings, Flowers addressed the rumors and purported harassment, indicating that this sort of behavior was not appropriate and could lead to termination.

Mire contends that immediately after the February monthly meeting, which took place on February 1, 2005, she received a sexually suggestive phone call from Ackley. The following day, on February 2, 2005, she reported the phone call to Anthony and Flowers. Plaintiff was discharged two days later, on February 4, 2005. She was told she was being terminated because "she wasn't doing her job." On July 25, 2005, Mire filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On February 24, 2006, she filed the present lawsuit.

TPS filed a motion for summary judgment. In support of its motion, it submitted deposition testimony in which employees maintained that they did not make any sexual comments toward Mire and did not make any sexual advances, nor did they see or hear any other employee do so. With respect to Mire's sexual harassment claim, the district court granted summary judgment to TPS on the basis that the conduct complained of by Mire was insufficiently offensive to constitute a hostile or abusive workplace. With respect to Mire's retaliation claim, the district court found that Mire failed to provide any evidence of a causal connection between her protected opposition and her discharge, and therefore granted summary judgment on this claim as well. Mire appealed.

II.

This Court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. Strong v. Univ. Healthcare

Sys., L.L.C., 482 F.3d 802, 805 (5th Cir. 2007). "Summary judgment is proper when there exists no genuine issue of material fact and the movant is entitled to judgment as matter of law." Id. (citing FED. R. CIV. P. 56(c)). "The evidence and inferences from the summary judgment record are viewed in the light most favorable to the nonmovant." Minter v. Great Am. Ins. Co. of N.Y., 423 F.3d 460, 465 (5th Cir. 2005).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the nonmovant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. To survive a summary judgment motion, the nonmovant "need only present evidence from which a jury might return a verdict in his favor," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986), but mere allegations or denials will not defeat a well-supported motion for summary judgment. FED. R. CIV. P. 56(e).

III.

Hostile work environment claims are serious and serve "to level the playing field for women who work by preventing others from impairing their ability to compete on an equal basis with men." DeAngelis v. El Paso Mun. Police Officers Ass'n, 51 F.3d 591, 593 (5th Cir. 1995). This type of "claim embodies a series of criteria that express extremely insensitive conduct against women, conduct so egregious as to alter the conditions of employment and destroy their equal opportunity in the workplace." Id. To establish the elements of a hostile work environment claim, Mire must show:

> (1) she belongs to a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the

harassment was based on sex, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take remedial action.

Green v. Adm'rs of the Tulane Educ. Fund, 284 F.3d 642, 655 (5th Cir. 2002). This Court has recognized, in light of the Supreme Court's holdings in Burlington Indus., Inc.. v. Ellerth, 524 U.S. 742 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998), that in circumstances where the alleged harasser is a supervisor with authority over the employee, as in this case, only the first four elements need be satisfied. See Watts v. Kroger Co., 170 F.3d 505, 509 (1999).

The district court found that Mire did not satisfy the fourth element. To decide whether the alleged harassment affected a term, condition, or privilege of her employment, she must show that the conduct was "severe or pervasive." Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 434 (5th Cir. 2005). The conduct must also qualify as both "subjectively and objectively offensive." Green, 284 F.3d at 655. "'Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance.'" Id. at 655-56 (quoting Weller v. Citation Oil & Gas Corp., 84 F.3d 191, 194 (5th Cir. 1996)). As we recently noted, "[t]he determination of whether alleged conduct is sufficiently severe or pervasive is not an exact science, but this Court's decisions on this issue provide guidance here." Gibson v. Potter, No. 07-30521, 2008 U.S. App. LEXIS 2111, *8 (5th Cir. Jan. 31, 2008). The "mere utterance of an . . . . epithet which engenders offensive feelings in an employee" is not alone sufficient to support Title VII liability. Weller, 84 F.3d at 194 (citing DeAngelis, 51 F.3d at 594). However, sexually discriminatory verbal intimidation, ridicule, and

insults may be sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment that violates Title VII. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)(citing Meritor, 477 U.S. at 65, 67).

In concluding that the conduct complained of by Mire was insufficiently offensive to establish an abusive work environment, the district court relied on our decisions in Waltman v. International Paper Co.,875 F.2d 468 (5th Cir. 1989) and Farpella-Crosby v. Horizon Health Care, 97 F.3d 803, 806 (5th Cir. 1996), in which we found that plaintiff had adequately demonstrated a hostile work environment claims, and Shepherd v. Comptroller of Public Accounts, 168 F.3d 871 (5th Cir. 1999), in which we rejected plaintiff's hostile work environment claims. In Waltman, the plaintiff alleged that: (1) the defendant's employees several times broadcast obscenities directed at plaintiff over the public address system; (2) numerous employees (over 80%) made sexually suggestive comments to plaintiff and propositioned her; (3) plaintiff's supervisor urged her to have sex with a coworker and touched her inappropriately on several occasions; (4) over the course of three years, plaintiff received more than thirty pornographic notes in her locker; and (5) one of plaintiff's co-workers threatened her with physical harm and later dangled her over a stairwell. 875 F.2d at 470-71. In Farpella-Crosby, the plaintiff claimed that her supervisor: (1) frequently made comments "attributing [plaintiff's] large number of children to a proclivity to engage in sexual activity;" (2) inquired about or commented on [plaintiff's] sexual activity two to three times a week; (3) joked to her co-workers that plaintiff "[didn't] know how to use condoms;" (4) and threatened plaintiff's job when she asked him to stop making these comments. In contrast, in Shepherd, we found the following allegations insufficient: the alleged harasser (1) made two inappropriate comments on two different occasions ("your elbows are the same color as your nipples" and "you have big thighs"); (2) attempted to look down the

plaintiff's clothing several times; (3) touched her arm several times, once rubbing his hand from her shoulder down to her wrist; and (4) twice, patted his lap and remarked "here's your seat."  Shepherd, 168 F.3d at 872.

Viewed in the light most favorable to Mire, Mire's testimony establishes that she was subjected to an almost constant barrage of sexual comments and touching by multiple male employees in the sales and warehouse areas of TPS. These included sexually suggestive comments about Mire's appearance, inquiries about her sexual activity, and requests to fondle her or have sex with her. Further, Mire testified that numerous employees participated in the harassment, and that the comments were made in front of other co-workers, as well as customers.  The harassment was not limited to verbal intimidation; Mire testified that she was touched nonconsensually by a co-worker on more than one occasion.  Mire testified that the harassment was so frequent that she was unwilling to even enter certain areas of the building.

Although none of these individual alleged incidents of harassment may rise to the level of severity we have required,[1] the test – whether the harassment is severe or pervasive – is stated in the disjunctive.[2]  Reviewing the facts in the light most favorable to Mire, we conclude that the district court erred in finding that she did not raise a genuine issue of fact as to whether the alleged conduct toward her was sufficiently pervasive to alter the terms of her employment.  In

---

[1] See, e.g., Gibson, 2008 U.S. App. LEXIS 2111, *9-11 (holding that one nonsconsensual physical touching, combined with "boorish and offensive" comments, were not severe as a matter of law); Hochman v. Westward Commc'ns, LLC, 407 F.3d 317, 328 (5th Cir. 2004) (holding that comments to plaintiff about another employee's body, slapping plaintiff on the behind with a newspaper, grabbing or brushing up against plaintiff's breasts and behind, and attempting to kiss plaintiff were not severe as a matter of law).

[2] At numerous points during its opinion, the district court appears to have required Mire to show that the conduct was both severe and pervasive.  In doing so, the district court applied the wrong legal standard.  See Harvill, 433 F.3d at 434 ("[T]he Supreme Court has stated that Title VII provides a legal remedy to victims who establish that the abusive conduct was severe or pervasive." (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986))).

our view, the facts of this case are more similar to Waltman and Farpella-Crosby than Shepherd.  Like the plaintiff in Waltman, Mire claims that she was subjected to inappropriate sexual comments and unwanted touching and that numerous male co-workers participated in the harassment.  Moreover, like the plaintiff in Farpella-Crosby, Mire alleges that the harassment was constant, occurring on almost a daily basis.  It is true that in both Waltman and Farpella-Crosby the alleged harassment occurred over a longer period of time than the harassment alleged by Mire.  See Waltman, 875 F.2d at 471 (harassment occurring over a period of years); Farpella-Crosby, (harassment occurring over a period of four to six months).  However, while the time period over which the harassment occurs is a relevant factor, we have never set a minimum time period over which the harassment must occur to be deemed pervasive.  Finally, the plaintiff in Shepherd, unlike Mire, alleged that only one supervisor harassed her, and did not allege that other supervisors or co-workers engaged in the harassment.

Viewing the facts in the light most favorable to Mire, she has painted a picture of a workplace permeated with inappropriate sexual comments and unwanted touching.  Thus, given the frequency of the harassment alleged by Mire, occurring for more than two months, combined with the number of co-workers allegedly participating, we conclude that she presented sufficient evidence of pervasive harassment to survive summary judgment as to this element.  See Lauderdale v. Tex. Dep't of Crim. Justice, 512 F.3d 157, 164 (5th Cir. 2007) (holding that daily phone calls and unwanted sexual advances by co-worker over a four-month time period amounts to pervasive harassment); Farpella-Crosby v. Horizon Health Care, 97 F.3d 803, 806 (5th Cir. 1996) (holding that co-workers comments about plaintiff's sexual activity and proclivity, made two to three times a week and sometimes in front of co-workers, were sufficiently severe and pervasive to create a hostile work environment).

Because there is a genuine issue of material fact as to whether the alleged harassment affected a term, condition, or privilege of Mire's employment, the district court erred in granting summary judgment on this ground.

IV.

The district court also granted summary judgment as to Mire's retaliation claim. Under Title VII, a plaintiff may prove retaliation either by direct or circumstantial evidence. McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir. 2007). A case built on circumstantial evidence, like this one, is analyzed pursuant to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). McCoy, 492 F.3d at 556. Thus, in order to maintain an action for retaliation, a plaintiff must make a prima facie showing that: (1) she participated in an activity protected by Title VII, (2) the employer took an adverse employment action against her, and (3) a causal link exists between the protected activity and the adverse employment action. Banks v. E. Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003). If the plaintiff is able to establish a prima facie case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the employment action. Gee v. Principi, 289 F.3d 342, 345 (5th Cir. 2002). If the employer meets this burden of production, the plaintiff must then prove that the employer's proffered reason is a pretext for an actual, retaliatory purpose. McCoy, 492 F.3d at 557.

TPS asserts that Mire was fired because of her poor performance, combative demeanor, and continual dishonesty, and points to the deposition testimony of Flowers and Snyder in support of this contention. Accordingly, as the district court correctly noted, because TPS articulated a legitimate, nondiscriminatory reason for Mire's termination, the burden shifted to plaintiff to prove "that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." Id. "To carry this burden,

the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." Id.

To survive summary judgment, a plaintiff relying on pretext must "produce evidence rebutting all of a defendant's proffered nondiscriminatory reasons." Machinchick v. PB Power, Inc., 398 F.3d 345, 351 & n.16 (5th Cir. 2005). Both Mire and the EEOC, as amicus curiae, argue that a jury could disbelieve TPS's explanation based on the following: (1) Mire had not been reprimanded or counseled about performance problems; (2) Mire's personnel file contained nothing documenting any performance problems; and (3) Mire received a raise and bonus, both based on satisfactory performance, during the year prior to her termination. However, it is not sufficient for Mire to point to the lack of documentation produced by TPS; rather, to rebut TPS's reasons, she was required to provide evidence demonstrating the falsity of each of TPS's reasons. See Ajao v. Bed Bath & Beyond Inc., 265 F. Appx. 258, 263. Mire, however, produced no evidence, beyond her subjective belief, that TPS's reasons for terminating her were false, i.e., that she performed adequately, was not dishonest, and was not combative. Mire's bare assertions that she did not perform poorly is not sufficient to raise a fact issue as to the legitimacy of TPS's proffered reasons. Id., 2008 U.S. App. LEXIS 2866 at *13 (holding that employee did not create a fact issue as to whether employer's poor-performance reason was a pretext where employee produced no evidence of his own good performance); Machinchick, 398 F.3d 345 at 354-355 (finding that employee's testimony that employer's proffered reason was not true was insufficient to raise fact issue).

Therefore, the district court did not err in granting summary judgment to TPS on Mire's retaliation claim.

V.

For the reasons stated above, we REVERSE and REMAND the district court's dismissal of Mire's sexual harassment claim and AFFIRM the district court's dismissal of her retaliation claim.